1
2
3
4
5
6
7

8                 UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF WASHINGTON
9                          AT SEATTLE

10

11 LEONARD C. LINDSAY and           Case No. _____
CARL E.W. ZEHNER,
12                       **CLASS ACTION AND INDIVIDUAL**
            Plaintiffs,        **COMPLAINT FOR DAMAGES**
13
        v.                    1.  NEGLIGENCE
14                         2.  GROSS NEGLIGENCE
CARNIVAL CORPORATION,      3.  NEGLIGENT INFLICTION OF
15 CARNIVAL PLC , HOLLAND          EMOTIONAL DISTRESS
AMERICA LINE, INC., HOLLAND    4.  INTENTIONAL INFLICTION OF
16 AMERICA LINE – U.S.A., INC.,        EMOTIONAL DISTRESS
17            Defendants.      **DEMAND FOR JURY TRIAL**

18

19               **<u>COMPLAINT AND JURY DEMAND</u>**

20     Plaintiffs Leonard C. Lindsay and Carl E. W. Zehner bring this action on behalf of

21 themselves and the more than 1,000 passengers who sailed on the cruise aboard the MS

22 ZAANDAM, which boarded on March 7, 2020 and embarked on March 8, 2020, originating in

23

24 Buenos Aires, Argentina, against Defendants, HOLLAND AMERICA, LINE, INC. and

25 HOLLAND AMERICA LINE – USA, INC. (collectively, "HOLLAND"), their parent

26 companies CARNIVAL CORPORATION and CARNIVAL PLC (collectively, "CARNIVAL")

CLASS ACTION COMPLAINT - 1
Case No.

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

and allege:

## THE PARTIES

1.      Individual and representative Plaintiff Leonard C. Lindsay ("Lindsay") is *sui juris*, a resident of Davidson County, Tennessee, and was a passenger on the MS ZAANDAM cruise from March 7, 2020, to disembarkation on or about April 9, 2020.

2.      Individual and representative Plaintiff Carl E.W. Zehner  ("Zehner") is *sui juris*, a resident of Davidson County, Tennessee, and was a passenger on the MS ZAANDAM cruise from March 7, 2020, to disembarkation on or about April 5, 2020.

3.      Defendant CARNIVAL CORPORATION was incorporated in 1972 in Panama and has its headquarters in Miami, Florida.

4.      Defendant CARNIVAL PLC was incorporated in 2000, in Wales, United Kingdom, and has its headquarters in Miami, Florida.

5.      Defendant HOLLAND AMERICA LINE, INC. is incorporated in Washington, and has its headquarters in Seattle, Washington.

6.      Defendant HOLLAND AMERICA LINE – USA, INC. is incorporated in Washington, and has its headquarters in Seattle, Washington.

7.      Upon information and belief, at all times hereto, CARNIVAL CORPORATION, CARNIVAL PLC, HOLLAND AMERICA LINE, INC. and HOLLAND AMERICA LINE – USA, INC. advertised, marketed, sold, and profited (directly or indirectly) from and owned, controlled, and operated the cruise ship, MS ZAANDAM.

CLASS ACTION COMPLAINT - 2
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

1

## ALTER EGO/PIERCING CORPORATE VEIL

8.      Defendants CARNIVAL CORPORATION, CARNIVAL PLC, HOLLAND

AMERICA LINE, INC. and HOLLAND AMERICA LINE – USA, INC. are alter egos and/or

agents of each other such that the corporate form should be disregarded.

9.      CARNIVAL CORPORATION and CARNIVAL PLC operate as a single

economic enterprise. They share a senior executive management team and identical Boards of

Directors. Both Carnival Corporation and Carnival plc share a single headquarters in Miami,

Florida.

10.     As described by CARNIVAL CORPORATION in a filing with the Securities and

Exchange Commission ("SEC"), "Carnival Corporation and Carnival plc operate a dual listed

company ('DLC'), whereby the businesses of Carnival Corporation and Carnival plc are

combined through a number of contracts and through provisions in Carnival Corporation's

Articles of Incorporation and By-Laws and Carnival plc's Articles of Association." Plaintiffs

bring this lawsuit against CARNIVAL CORPORATION and CARNIVAL PLC individually, but

because the entities work as alter-egos and/or agents of one another, Plaintiffs refer to them

collectively throughout this Complaint as "CARNIVAL."

11.     In a 2016 federal criminal plea agreement, CARNIVAL stated that it "currently

monitors and supervises environmental, safety, security, and regulatory requirements for" its

brands, including HOLLAND. The agreement also explained that "Carnival Corporation & plc

operate a total of 101 ships visiting 700 ports around the world, including most major ports in the

United States."

12.     HOLLAND AMERICA LINE – USA, INC. is registered in Delaware as a

CLASS ACTION COMPLAINT - 3
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

"holding company." HOLLAND AMERICA LINE, INC. is registered in the State of Washington. HOLLAND AMERICA LINE – USA, INC. and HOLLAND AMERICA LINE, INC. share a corporate headquarters in Seattle, Washington and have multiple corporate governors in common. They are one and the same. Accordingly, Plaintiffs refer to them collectively herein as "HOLLAND."

13.     CARNIVAL has ownership and control over HOLLAND, which is organized under Holland America Group within CARNIVAL. CARNIVAL has claimed in filings with the SEC that it wholly owns HOLLAND as a subsidiary.

14.     As described in these filings, HOLLAND is one of many subsidiary "operating lines" wholly-owned by CARNIVAL. CARNIVAL has described these lines as "semi-autonomous entities within the Carnival Corporation and Carnival plc (formerly P&O Princess Cruises plc) corporate umbrella."

15.     CARNIVAL and HOLLAND share a Board of Directors and appear to use the same assets.

16.     CARNIVAL exerts control and domination over HOLLAND's business and day-to-day operations.

## JURISDICTION

17.     This Court has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves a maritime tort. The type of incident and injuries suffered by Plaintiffs and the class had the potential to impact maritime commerce as Plaintiffs and the class suffered harm and Plaintiffs the class were and continue to be at serious risk of imminent harm as a result of exposure to COVID-19 aboard the cruise ship upon which they were paying passengers.

CLASS ACTION COMPLAINT - 4
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

4835-8838-5729, v. 1

18.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, codified at 28 USC §1332(d)(2)(A) and (C), because the claims of the proposed Class Members exceed $5,000,000 and because at least one member of the Proposed Class of plaintiffs is a citizen of a state different from at least one Defendant.

19.     This Court has personal jurisdiction over Defendants, who each conduct substantial business in and from within this District.

20.     Defendant HOLLAND has its headquarters in Seattle, Washington.

21.     Upon information and belief, CARNIVAL, including by and through its subsidiary, HOLLAND, markets cruise vacations to Washington residents and employs thousands of Washington residents to work at its Washington headquarters. The Court has personal jurisdiction over CARNIVAL because CARNIVAL is authorized to do business in Washington, conducts substantial business in Washington and some of the actions giving rise to this Complaint took place in Washington.

22.     The claims asserted herein arise from Defendants' contacts with Washington.

23.     Additionally, each of the Defendants purports to be a party to the Cruise Contract, which purports to name the Western District at Seattle as proper venue to actions against Defendants. Although Plaintiffs do not concede the enforceability of the Cruise Contract, by naming this District as a proper venue, Defendants consented to personal jurisdiction in this District.

24.     Each of the facts pleaded independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

CLASS ACTION COMPLAINT - 5
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

1

## VENUE

2

25.     Venue in the Western District of Washington is proper under 28 U.S.C. § 1391

3

because Defendants are deemed to reside in any judicial district in which they are subject to

4

personal jurisdiction.

5

26.     Additionally, without conceding the enforceability of the Cruise Contract, the

6

7

terms of which were not reasonably conveyed to Plaintiffs, Plaintiffs acknowledge the inclusion

8

in the Cruise Contract of a venue selection provision designating the United States District Court

9

for the Western District of Washington at Seattle as a proper venue for this action.

10

## FACTUAL BACKGROUND

11

12

27.     In December 2019, a new strain of Coronavirus known as COVID-19 or SARS-

13

CoV-2 was first observed in humans in China. The virus quickly spread through China and Asia

14

and has caused a global pandemic. Infection with COVID-19 is generally associated with

15

symptoms such as fever, a dry cough, shortness of breath, infection, pneumonia, and it can be

16

fatal.

17

28.     However, clinicians and public health experts continue to learn more about the

18

19

virus and its effects on the human body. In addition to the cold- and flu-like symptoms COVID-

20

19 patients typically experience, the virus has been linked to loss of taste and smell, blood clots,

21

severe strokes, heart inflammation, acute kidney disease, intestinal damage, liver damage, and

22

neurological problems.[1]

23

24

---

25

[1] Lenny Bernstein, Carolyn Y. Johnson, Sarah Kaplan and Laurie McGinley. *Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts, and elsewhere.*, The Washington Post. April 15, 2020. https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html (last visited June 9, 2020).

26

CLASS ACTION COMPLAINT - 6
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

29.     As of the filing of this complaint, there have been over 2.2 million cases and over 119,000 deaths in the United States as a result of COVID-19.

30.     On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

31.     In early February 2020, experts in the European Union, led by epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols.[2] Specifically, the guidelines directed that, in the event of a COVID-19 case, close contacts of the case should be quarantined in their cabin or on shore, and "casual contacts" should be disembarked.[3]

32.     Defendants CARNIVAL and HOLLAND represent that they are committed to "the health, safety, and security" of their passengers and promote their business as one that "always strives to be free of injuries, illness and loss."[4] They further assert that they "[s]upport a proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety, Security] aimed at preventing, monitoring and responding to threats."[5]

---

[2] Interim Advice for Preparedness and Response to Cases of Acute Respiratory Disease at Points of Entry in the European Union (EU) / EEA Member States (MS): Advice for ship operators for preparedness and response to the outbreak of 2019-nCoV acute respiratory disease, Feb. 3, 2020, https://www.gac.com/491364/siteassets/about-gac/coronavirus/eu-interim-advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited June 9, 2020); *see also* Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, *Failures on Diamond Princess Shadow Another Cruise Ship Outbreak*, The New York Times, March 8, 2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited June , 2020).
[3] Healthy GateWays, Algorithm for decision making in response to an event of a suspect case of COVID-19, https://www.healthygateways.eu/Portals/0/plcdocs/Flow_chart_Ships_3_2_2020.pdf (last visited June 9, 2020).
[4] Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leading-responsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited June 9, 2020).
[5] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited June 9, 2020).

CLASS ACTION COMPLAINT - 7
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

33.     However, in or before early February 2020, Defendants became aware of an outbreak of COVID-19 aboard the cruise ship the Diamond Princess, which is operated by CARNIVAL and its subsidiary Princess Cruise Lines, Ltd. The outbreak originated on the Diamond Princess while the vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number rapidly escalated to over 700 cases—over one-fifth of the passengers onboard. Investigative reporting about the Diamond Princess alleges that well after CARNIVAL became aware of the first case aboard the ship, Defendants worked to "keep the fun going" by "encouraging [guests] to mingle."[6]

34.     In a February 18, 2020, update issued in response to the crisis aboard the Diamond Princess, the Center for Disease Control (CDC) stated that "the rate of new reports of positives [now] on board, especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk."[7]

35.     Upon information and belief, in February, CARNIVAL also operated a voyage on the Ruby Princess, from New Zealand to Australia. News reports suggest that in mid-to-late February, Defendants became aware of COVID-19 cases onboard the Ruby Princess. Despite this information, CARNIVAL operated a second voyage on the Ruby Princess, immediately following the New Zealand-to-Australia voyage. Since the vessel docked in Australia on March 19, over 600 passengers who were on the Ruby Princess have tested positive for the virus and 10 have died. Australian authorities have announced a criminal investigation into the matter.

---

[6] Austin Carr and Chris Palmieri, *Socially Distance This: Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going*, Bloomberg, April 16, 2020, https://www.bloomberg.com/features/2020-carnival-cruise-coronavirus/ (last visited June 9, 2020).
[7] *See* Centers for Disease Control and Prevention, Update on the Diamond Princess Cruise Ship in Japan, Feb. 18, 2020, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (last visited June 9, 2020).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

36.     CARNIVAL also operated two round-trip cruises from San Francisco aboard the Grand Princess in February. The first ran between February 11, 2020 and February 21, 2020. The second departed on February 21, 2020 and, following days of being forced to circle off the coast of San Francisco, was finally allowed to dock in the port of Oakland on March 9, 2020. These trips spurred the Governor of California to declare a state of emergency, and are linked to multiple deaths in San Francisco and other areas of California. Defendants knew as early as February 19, 2020—and possibly earlier—that passengers aboard the M/V GRAND PRINCESS were suffering from symptoms associated with COVID-19.

37.     To date, cruises run by CARNIVAL have been identified as responsible for more than 1,500 positive COVID-19 infections, and almost 40 deaths.

38.     The night before Plaintiffs boarded the MS ZAANDAM in Buenos Aires, they received an email from HOLLAND touting the companies' "deep partnerships with global health experts" and the "enhanced screening, prevention and control procedures" HOLLAND said it was instituting on its ships. This email also gave Plaintiffs the option of cancelling their trip—though provided no option to fund their return to the United States—in exchange for a future cruise credit. HOLLAND assured Plaintiffs that it was taking health precautions "seriously." In another email sent by HOLLAND to Plaintiffs on March 3, 2020, HOLLAND informed Plaintiffs that all guests boarding the MS ZAANDAM would be "subject to pre-boarding health reporting and enhanced screening at check-in."

39.     On March 7, 2020, Plaintiffs and the Class boarded onto the MS ZAANDAM in Buenos Aires, Argentina. The MS ZAANDAM's passengers had traveled from all over the world to meet the ship in Buenos Aires. Upon information and belief, some of these passengers

CLASS ACTION COMPLAINT - 9
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

traveled from regions of the world—like Europe—that, by or before March 7, 20202, were experiencing high rates of coronavirus infection.

40.     Plaintiffs' experience boarding the MS ZAANDAM did not comport with the assurances they had received from HOLLAND. When Plaintiffs boarded the MS ZAANDAM, they were not subject to any additional preventative measures. For instance, Defendants did not require Plaintiffs to take their temperature, and did not provide any mechanism that would allow Plaintiffs to do so. Additionally, Defendants did not implement social distancing among the passengers, or implement other reasonable precautions at this stage of the cruise. Upon information and belief, Defendants did not take any measures different from their typical preparations for a voyage, and made no COVID-19-specific efforts to prevent or contain contagion at the time of initial embarkation.

41.     The ship departed on Buenos Aires on March 8, 2020. The first leg of the trip was set to end in San Antonio, Chile, on March 21, 2020. The ship's schedule called for a second leg of the voyage, from San Antonio to Ft. Lauderdale, Florida, which was planned to conclude on April 7, 2020. Plaintiffs were scheduled to go on both legs of the cruise.

42.     On March 11, 2020, the World Health Organization declared coronavirus a global pandemic.

43.     The MS ZAANDAM made three ports of call, including one in Punta Arenas, Chile, where passengers disembarked the ship to participate in tours and site visits, and then returned to the ship. In Punta Arenas—but at no other ports of call—passengers were required to have their temperatures checked before going on land. However, Defendants did not conduct any additional screenings when Plaintiffs and other members of the class came back aboard.

CLASS ACTION COMPLAINT - 10
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

44.     After leaving Punta Arenas, the ship then made its way toward its next stop—Ushuaia, Argentina. Before it arrived, however, Argentina announced it was closing its borders to cruise traffic.

45.     On March 13, 2020, while the MS ZAANDAM was still at sea, HOLLAND announced that, due to the pandemic, it was suspending its cruise operations for 30 days.

46.     On or about March 14, 2020, Argentina denied the MS ZAANDAM entry to its ports and the vessel made its way back toward Chile, hoping to unload passengers at its prior stop in Punta Arenas.

47.     On March 15, 2020, passengers learned that Defendants had canceled the remaining itinerary for the MS ZAANDAM. Passengers received a letter from HOLLAND apologizing for the trip's "abrupt end."[8]

48.     On information and belief, the decision to cancel the remainder of the voyage came in response to the pandemic and an announcement from South American ports that they would not accept cruise ship traffic. On or about that same day, Chile also denied the MS ZAANDAM entry to its ports. Passengers—including Plaintiffs—were not informed of when or where the ship would dock, or when they would be allowed to disembark.

49.     In the days following HOLLAND's notice to passengers about the itinerary cancellation, the MS ZAANDAM continued its voyage, but with no set destination. During this time, Defendants became aware that multiple crew members and passengers were exhibiting symptoms of COVID-19. Upon information and belief, this information would have triggered

---

[8] Aine Cain, *Inside the deadly voyage of 2 Holland America cruises stricken with coronavirus and stranded at sea for weeks with hundreds of sick passengers*, Business Insider, April 4, 2020, https://www.businessinsider.com/holland-america-zaandam-rotterdam-coronavirus-stricken-ships-2020-4 (last visited June 9, 2020)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ♦ FAX 206.682.2992

4835-8838-5729, v. 1

mandatory reporting under 42 CFR 71.1 *et seq.* and constitutes a "hazardous condition" per 33 CFR § 160.216.[9] Nevertheless, passengers continued to gather in large crowds, attend cruise ship events, and share meals together, at the encouragement of Defendants. In fact, Defendants instituted *additional* group activities, like trivia nights and dance parties, to entertain passengers while they were stuck at sea.

50.     It was not until approximately one week after the ship was denied entry to South American ports that Defendants took any steps to address potential COVID-19 exposure to passengers and crew members. Beginning on or around March 22, 2020, guests were asked to isolate themselves in their staterooms. Their meals were delivered to them by crew members, who also handled their laundry services. Prior to that date, Defendants provided passengers on the ship, including Plaintiffs, with no fore-warning that passengers and crew members were experiencing flu-like symptoms, although Defendants were aware of the growing population of ill passengers for many days.

51.     On information and belief, by or around March 24, 2020, approximately 30 passengers and 47 crew members had reported to the MS ZAANDAM's infirmary due to respiratory and flu-like symptoms. Within a few days, at least 20 more passengers would report feeling ill and experiencing symptoms associated with COVID-19.

52.     Defendants sent the MS ROTTERDAM to meet the MS ZAANDAM off the coast of Panama in order to deliver COVID-19 tests, ventilators, and other supplies to the vessel. Shortly after the MS ROTTERDAM departed to meet the MS ZAANDAM, however,

---

[9] Section 160.216 requires that "[w]henever there is a hazardous condition … on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office . . . ." A"[h]azardous condition means any condition that may adversely affect the safety of any vessel … or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve … injury *or illness of a person aboard* … ." 33 CFR § 160.202 (emphasis added).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

Defendants instructed that the MS ROTTERDAM would, in fact, take on passengers from the MS ZAANDAM.

53.     On March 26, 2020, audio of the captain of the MS ROTTERDAM leaked in which he announced to crew members aboard the MS ROTTERDAM that four "older" passengers aboard the MS ZAANDAM had died onboard, on or around the 26th. The next day, March 27, 2020, the crew of the MS ZAANDAM announced the deaths on the public address system. HOLLAND has since confirmed that two of these deaths were related to COVID-19. It has not provided details about the other two.

54.     On or about March 27, 2020, while still onboard the MS ZAANDAM, Plaintiff Zehner began experiencing symptoms resembling COVID-19. Eventually, Zehner received a COVID-19 test, and the results showed that he was positive for the virus. At that point, Zehner was re-located to another area of the ship.

55.     Also on March 27, 2020—as a result of the vast number of sick passengers and crew members—the MS ZAANDAM was denied transit through the Panama Canal.

56.     On or around the same day, asymptomatic MS ZAANDAM passengers and some staff were transferred to the MS ROTTERDAM. Passengers onboard the MS ZAANDAM who had become ill or were experiencing COVID-19 symptoms, along with their "close contacts" remained onboard the MS ZAANDAM. Plaintiffs Zehner and Lindsay remained on the MS ZAANDAM.

57.     On or about March 28, 2020 or March 29, 2020, Panama agreed to allow the MS ZAANDAM to transit through the canal en route to Florida.

58.     Following extended public debate about whether the state of Florida would accept

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the vessel, on or about April 1, 2020, the MS ZAANDAM arrived at port in Port Everglades, Florida. The following day, some passengers and crew members were allowed to disembark, but most remained on their respective ships. Approximately 107 passengers on either the MS ZAANDAM or the MS ROTTERDAM, and 143 crew members on the MS ZAANDAM had experienced COVID-19-related symptoms.

59.     The following day, April 3, 2020, most of the remaining passengers onboard the MS ZAANDAM and the MS ROTTERDAM disembarked.

60.     After passengers disembarked, they were taken, when possible, to hospitals or provided with means of traveling to their homes, where they then remained in self-quarantine.

61.     Plaintiffs Zehner and Lindsay, who are married, both remained on the MS ZAANDAM, because no local hospital would accept Zehner, whose condition had worsened.

62.     Finally, on April 5, 2020, an Orlando hospital agreed to accept Zehner as a patient and he was transported by helicopter to Advent Health Orlando Hospital. Zehner was placed on a ventilator shortly after arriving. He remained on a ventilator for approximately three weeks. Eventually he was transported to Select Specialty Longterm Acute Care Hospital South Orlando. And, on June 2, 2020, he was transported to Vanderbilt Stallworth Rehabilitation Hospital in Nashville, Tennessee. As of this filing, Plaintiff Zehner has been released to his home, but has not yet made a full recovery.

63.     Plaintiff Lindsay was forced to remain onboard the ship until April 9, 2020. He was not tested for the virus at any time while onboard. After disembarking, he returned to Nashville after Zehner was taken to the hospital and, at that point, began a new period of quarantine.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

64.     At the time of this filing, Defendant CARNIVAL has suspended its cruise services for the time being. However, CARNIVAL's website indicates that it intends to begin operating certain cruise ships as early as October 1, 2020, potentially posing grave threats to their passengers, crew members, and the public health.[10] Likewise, HOLLAND reports that it has canceled all cruises to Alaska, Europe, Canada, and New England through the end of 2020, but it does not provide any information regarding cruises—like the voyage at issue here—traveling to South America.[11]

65.     As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff Zehner was exposed to and suffered from COVID-19 while onboard the MS ZAANDAM and, as a direct result of Defendants' negligence, continues to suffer from the effects of this illness.

66.     As a direct and proximate result of the negligence and gross negligence of Defendants in exposing Plaintiffs and Class Members to actual risk of immediate physical injury, Plaintiffs and Class Members suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

67.     Plaintiffs and Class Members were traumatized by the fear of developing COVID-19 as well as by their confinement on an infected vessel in isolation for approximately two weeks, in some cases knowing that their friends and loved ones were suffering from a

---

[10] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-sailing-updates (last visited June 23, 2020).

[11] Holland America Line Extends The Pause Of Ship Operations For All 2020 Alaska, Europe And Canada/New England Sailings, Holland America Travel Advisory, https://www.hollandamerica.com/en_US/news/coronavirus-travel-advisory.html (last visited June 9, 2020).

CLASS ACTION COMPLAINT - 15
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

potentially lethal illness. Plaintiffs and Class Members also suffered from significant emotional distress caused by the fear, after disembarking from the cruise, that they or their friends and family would succumb to COVID-19 and suffer illness, and possibly death, as a result of Defendant's negligence and gross negligence.

68.     Furthermore, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs and Class Members develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams. Plaintiffs and the Class Members are suffering and will continue to suffer due to the ever-present fear and anxiety that they will or may later experience negative health outcomes or complications as a direct and proximate result of being exposed to, and potentially contracting, COVID-19 because of Defendants' negligent and grossly negligent acts and omissions.

69.     Plaintiffs expect that they and Class Members will continue to suffer and will, in the future, require medical services not of a kind generally accepted as part of the wear and tear of daily life, as a result of Defendants' negligence and gross negligence.

### **NOTICE**

70.     Section 15 (A)(i) of the Cruise Contract purports to required that claimants provide notice to HOLLAND and CARNIVAL of any potential claims.  Although Plaintiffs do not concede that this provision is enforceable, Plaintiffs and Class Members complied with this requirement by providing written notice to Defendants' electronically on June 18, 2020.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all

similarly-situated persons pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2),

(b)(3), and/or (c)(4). This action satisfies the applicable numerosity, commonality, typicality,

adequacy, predominance, and/or superiority requirements of those provisions.

72.     The proposed Class is defined as follows:  All persons in the United States, who

sailed as passengers on the MS ZAANDAM cruise that departed from Buenos Aires, Argentina,

on March 8, 2020.

73.     Excluded from the proposed Class are: (1) CARNIVAL and HOLLAND, any

entity or division in which either have a controlling interest, and its legal representatives,

officers, directors, assigns and successors; (2) the judicial officer(s) to whom this case is

assigned and the judicial officer(s)' immediate family and legal staff; and (3) governmental

entities. Plaintiffs reserve the right to amend the Class definition if discovery and further

investigation reveal that the Class should be expanded, otherwise divided into subclasses, or

modified in any other way.

74.     The individual Plaintiffs named in this complaint support the use of the class

action mechanism to achieve economy, efficiency, fairness and consistency of result by

determining the important common questions raised in this action on a common basis.

### A.     Numerosity

75.     There were, on information and belief, approximately 1,243 passengers on the MS

ZAANDAM for the cruise that is the subject of this action. Their exact number and identities can

be readily ascertained from Defendants' records. The individual joinder of all passengers is

CLASS ACTION COMPLAINT - 17
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

impractical, and the class action procedure is more practical, cost-effective, inclusive, and efficient than multiple lawsuits on the common questions of law and fact that unite the class, or piecemeal and incomplete individual joinder. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Health and Human Services.

### B.   Typicality

76.   Plaintiffs' claims are typical of the claims of Class Members in that Plaintiffs, like all Class Members, sailed on the MS ZAANDAM cruise that boarded on March 7, 2020 and departed on March 8, 2020. Plaintiffs, like all Class Members, were damaged by Defendants' misconduct in that they sailed on a cruise they would not have sailed on and suffered significant injury, emotional distress and economic damage caused by the negligence of Defendants, and each of them. The factual bases of CARNIVAL and HOLLAND's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

### C.   Adequate Representation

77.   Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting class actions, aggregate suits, and mass torts.

CLASS ACTION COMPLAINT - 18
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

78.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of all Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class Members.

**D.     Predominance of Common Issues**

79.     There are numerous questions of law and fact, including those related to Defendants' knowledge, conduct, and duty throughout the events described in this Complaint, common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include, inter alia:

a.      what Defendants knew about the presence and risks associated with the COVID-19 virus, and contagions generally, and when they knew it;

b.      whether Defendants should have canceled the subject cruise to avoid exposing passengers to a deadly pathogen and/or taken other steps to avoid exposing passengers to a deadly pathogen, particularly after learning that passengers on the Diamond Princess and Grand Princess had become ill and died as a result of COVID-19;

c.      whether Defendants had a duty to institute screening and medical examination protocols before boarding passengers onto the MS ZAANDAM;

d.      whether Defendants should have provided warning to the Class about the high risks presented by viral infection on cruise ships, in light of the quickly rising spread of COVID-19 throughout the globe;

CLASS ACTION COMPLAINT - 19
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

e.      whether Defendants had a duty to implement social distancing and/or quarantine measures immediately after they became aware that passengers were experiencing symptoms of COVID-19;

f.      whether Defendants should have warned Plaintiffs and the Class that passengers onboard the MS ZAANDAM were suffering from COVID-19 symptoms;

g.      whether Defendants effectively and appropriately disinfected and sanitized the MS ZAANDAM before they boarded passengers onto the ship on March 7, 2020, and/or while the ship was at sea;

h.      interpretation of the applicable contract documents and the associated "Passenger Bill of Rights" incorporated therein;

i.      whether Defendants acted as alter egos and/or agents, such that they should be held jointly liable for the conduct alleged herein;

j.      whether CARNIVAL is liable for the acts, omissions, and violations described in this Complaint;

k.      whether HOLLAND is liable for the acts, omissions, and violations described in this Complaint; and

l.      whether the conduct of any or all of the defendants warrants the imposition of punitive damages, to vindicate the societal interest in punishment and deterrence.

**E.      <u>Superiority</u>**

80.     Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of CARNIVAL's and HOLLAND's unlawful and wrongful conduct. A

CLASS ACTION COMPLAINT - 20
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

class action is superior to other available methods for the fair and efficient adjudication of this controversy.

81.     Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

82.     Class treatment of common questions of law and fact is superior to other available procedures, such as multiple individual actions or piecemeal litigation because class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**F.      Limited Fund**

83.     In an abundance of caution, Plaintiffs take note of the presently apparent financial circumstances of CARNIVAL and/or HOLLAND to allege the possibility that their assets and resources available to fairly compensate Plaintiffs and Class Members, to satisfy appropriate punitive damages awards, and/or otherwise fairly address the claims against them may constitute a "limited fund" within the meaning of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), such that class certification under Rule 23(b)(1)(B) is necessary and appropriate as a matter of due process and equity.

CLASS ACTION COMPLAINT - 21
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

4835-8838-5729, v. 1

**G.      Mass Action**

84.      In the alternative, this matter should proceed as a mass action, as defined in 28 U.S.C. § 1332 (d)(11)(B)(i), and should be tried jointly on the ground that Plaintiffs' claims involve common questions of law or fact, including as set forth above.

85.      Plaintiffs' individual claims exceed the required jurisdictional amount of $75,000.00.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### NEGLIGENCE AGAINST ALL DEFENDANTS

86.      Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

87.      Defendants owed Plaintiffs, and the Class, who were passengers who boarded the MS ZAANDAM on March 7, 2020, a duty to ensure that they would not be exposed to an unreasonable risk of harm.

88.      Likewise, Defendants owed Plaintiffs and the Class a duty to take actions to prevent and mitigate the risk of threats to passengers' health and safety, including by ensuring that the MS ZAANDAM was properly cleaned, disinfected, and safely maintained, and that passengers were provided with the information necessary to take effective protective measures for their health and well-being.

89.      Defendants knew or should have known that cruise ships pose an especially severe risk of viral outbreak. Defendants knew or should have known that cruise ships owned and operated by Defendants had been the sites of prior, lethal outbreaks of COVID-19, and

CLASS ACTION COMPLAINT - 22
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

should have been aware of new guidelines for the cruise industry published by Dr. Hadjichristoulou and a team of European experts on February 3, 2020. In particular, Defendants had knowledge of the actual risks facing passengers based on the outbreak of the virus on the Diamond Princess, Ruby Princess, and Grand Princess.

90.     Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

91.     Defendants breached their duty to Plaintiffs and the Class when, with the aforementioned knowledge, Defendants nevertheless chose to board Plaintiffs and the Class— passengers who had traveled to Buenos Aires from all over the world—onto the MS ZAANDAM without effective screening procedures, and chose to embark on the instant voyage.

92.     Defendants also breached their duties when, with that same knowledge, they chose not to screen or medically examine any crew members in advance of the instant cruise.

93.     Defendants further breached their duties to Plaintiffs and the Class when, with the above-mentioned knowledge, Defendants negligently chose during the instant voyage not to notify Plaintiffs and the Class of:  the actual risk that the ship was infested with COVID-19; the actual and extreme risks of contracting COVID-19 while using facilities on the vessel; and/or the actual and extreme risks of contracting COVID-19 while mingling with passengers and crew who were suffering or had suffered from COVID-19 symptoms and their close contacts.

94.     Additionally, Defendants breached their duties to Plaintiffs and the Class when they became aware that passengers onboard the MS ZAANDAM were experiencing symptoms of COVID-19 and Defendants failed to promptly notify Plaintiffs and the Class and failed to promptly implement measures—such as social distancing or quarantine—to prevent and mitigate the spread of COVID-19 aboard the ship.

CLASS ACTION COMPLAINT - 23
Case No.

4835-8838-5729, v. 1

95.     If Defendants had adequately informed Plaintiffs and the Class prior to boarding, or at any other time, of the relevant information in Defendants' possession, including the acute risk of viral contagion on cruise ships, the lack of adequate screening, lack of adequate disinfecting procedures, lack of adequate quarantining procedures, and the actual risk of exposure, Plaintiffs and the Class could have made informed decisions about their health and their families' health, including disembarking from or not boarding the vessel.

96.     Defendants repeatedly breached their duties to Plaintiffs and the Class when, throughout the instant voyage, with the aforementioned knowledge, they chose not to inform Plaintiffs of the continuing and growing risks of contracting COVID-19.

97.     Finally, Defendants continued to breach their duties to Plaintiffs and the Class when, prior to March 22, with the aforementioned knowledge and without any warning to Plaintiffs and the Class, they, *inter alia*, chose not to implement quarantine or social distancing protocols; chose to continue operating large, public gatherings and meals; chose to continue to operate daily turndown service; and chose to continue hosting communal activities.

98.     As a direct and proximate result of Defendants' failure to safeguard Plaintiffs and the Class, Plaintiffs and the Class were at actual risk of immediate physical injury.

99.     As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff Zehner became infected and was diagnosed with COVID-19 and Plaintiff Lindsay was put in imminent danger of suffering from severe and lethal illness.

100.    As a direct and proximate result of the aforementioned negligence of Defendants in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered physical injury, emotional distress of the nature and type that reasonable

CLASS ACTION COMPLAINT - 24
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. They were confined on an infected vessel in isolation. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally anticipated as part of the effects of daily life.

## SECOND CAUSE OF ACTION
## GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

101.    Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

102.    Defendants owed duties to Plaintiffs and the Class to:  safeguard against and mitigate the risks of passenger injury and illness; appropriately disinfect and sanitize the MS ZAANDAM, in light of the circumstances of a global pandemic; notify Plaintiffs and the Class of the actual and especially high risk of contracting COVID-19 aboard the MS ZAANDAM; and implement medical screening and examination protocols for crew and passengers.

103.    Defendants knew of the unreasonably high risk of viral contagion of COVID-19 on cruise ships, and Defendants knew that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19 in light of the situations on the Diamond Princess, Ruby Princess, and Grand Princess.

104.    Defendants' conduct in deciding to continue to operate the MS ZAANDAM with Plaintiffs and the Class aboard, even with the aforementioned knowledge, demonstrates an intentional failure to do what a reasonably careful cruise ship owner and operator would do

CLASS ACTION COMPLAINT - 25
Case No.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

under the circumstances, exhibits a willful and conscious disregard for the safety of Plaintiffs and the Class, and evidences recklessness and indifference by Defendants, which constitutes gross negligence.

105.    Defendants' failure to quarantine or otherwise shelter in their cabins the passengers and crew members prior to March 22 demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and operator would do.

106.    Defendants' choice not to warn Plaintiffs and the Class of their actual risk of harm in being exposed to COVID-19, either prior to boarding or while they were already on board, in light of the known risks of viral contagion aboard cruise ships and the rapidly- and globally-spreading threat of COVID-19 constitutes a failure to provide even a modicum of care to Plaintiffs and the Class. The continued and repeated choice not to provide passengers with notice of the actual risks facing them demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and/or operator would do.

107.    Moreover, Defendants demonstrated a willful and conscious disregard for the rights and safety of others, and an extreme departure of what a reasonably careful cruise ship owner and/or operator would do in their continued and repeated choices to:  not institute medical screening and examinations for passengers and crew members before the voyage; host large social gatherings and meals; conduct daily turn-down service; and not implement quarantine or social distance protocols until on or around March 22, 2020. These decisions manifest Defendants' utter failure to provide even a modicum of care to Plaintiffs and the Class.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

108.     Defendants chose to place profits over people, including the safety of their passengers, crew, and the general public in continuing to operate business as usual, despite their knowledge of the actual—potentially lethal—risk to Plaintiffs and the Class.

109.     As a direct and proximate result of Defendants' conduct, Plaintiffs were placed at actual, continual risk of immediate, and potentially fatal, physical injury.

110.     Indeed, as a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, Plaintiff Zehner became infected and was diagnosed with COVID-19, and was hospitalized for months, including approximately three weeks that he spent on a ventilator. Plaintiff Lindsay was put in imminent danger of suffering severe and potentially lethal illness.

111.     Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. They were confined on an infected vessel in isolation for over 2 weeks. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally accepted as a typical part of daily life.

### THIRD CAUSE OF ACTION
### <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

112.     Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

113.    Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, in light of the situations on ships owned and operated by CARNIVAL—including the Diamond Princess, Ruby Princess, and Grand Princess–prior to the instant voyage on the MS ZAANDAM, Defendants knew or should have known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19.

114.    Nevertheless, Defendants chose to board Plaintiffs and the Class onto the MS ZAANDAM on March 7, 2020 without instituting any procedures for medical screening or examination. Defendants then chose to embark upon the Chile-bound voyage, essentially trapping Plaintiffs and the Class on a vessel infested with COVID-19. Throughout the duration of the trip, Defendants continually and repeatedly:  failed to effectively alert passengers to the possibility of infection aboard the ship until it was too late; and hosted and encouraged participation in large group activities and events that Defendants knew could lead to large-scale infection among the crew and passengers.

115.    These choices by Defendants created a dangerous and threatening environment in which Plaintiffs and the Class were forced to live for almost a month, at all times directly at risk of becoming infected with, made ill by, and/or spreading COVID-19.

116.    As the direct and proximate result of Defendants' actions and omissions throughout the duration of their voyage aboard the MS ZAANDAM, Plaintiffs and members of the Class were in the "zone of danger," in which they were in immediate risk of actual physical harm, including the potential of contracting COVID-19, suffering from the illness—including experiencing shortness of breath, coughing, body aches, fever, and/or any number of yet-to-be-identified future ailments, such as liver damage, kidney failure, or blood clotting—and potentially death as a result of the virus.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

117.     Plaintiffs and members of the Class experienced severe psychic injuries, of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, when they were forced to watch first hand as their friends and family members became ill with COVID-19, feared for their own safety and well-being, and continue to fear that they may begin exhibiting symptoms or health complications not yet identified as a result of COVID-19. Plaintiffs suffered physical and emotional injury as the direct and proximate result of Defendants' misconduct.

118.     As a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, Plaintiffs became infected and were diagnosed with COVID-19.

119.     Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame related to their own risk of contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the threat to their own health of becoming infected with the virus or suffering future negative health outcomes or complications related to exposure to or contraction of the virus.

120.     Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced into confinement on an infested vessel in isolation. It is expected

CLASS ACTION COMPLAINT - 29
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

that Plaintiffs and the Class will continue to suffer and will, in the future, require medical

services not of a kind generally anticipated as a typical part of daily life.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

121.    Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully

herein.

122.    Defendants knew or should have known of the actual risk of viral contagion of

COVID-19 aboard cruise ships, and, based on the situations aboard CARNIVAL-owned ships

the Diamond Princess, Ruby Princes, and Grand Princess, Defendants knew or should have

known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-

19.

123.    By or before the time of boarding passengers onto the MS ZAANDAM, on March

7, 2020, Defendants knew or should have known of the extreme risks to health and safety—

including the possibility of death—presented by COVID-19.

124.    In light of this knowledge and experience, and particularly given that cruise ships

present an especially heightened risk of contagion, Defendants exhibited extreme and outrageous

conduct when, *inter alia*, Defendants boarded Plaintiffs and the Class onto the MS ZAANDAM

on March 7, 2020 without taking any effective measures to medically screen or examine

passengers for COVID-19 symptoms.

125.    Defendants exhibited repeated and continued extreme and outrageous conduct

when, prior to March 22, 2020, Defendants failed to: notify Plaintiffs and the Class about the

actual and potential threat of exposure to, infection of, and the possibility of spreading COVID

CLASS ACTION COMPLAINT - 30
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

-19 aboard the ship; failed to advise Plaintiffs and the Class about the possibility and health benefits of disembarking during the trip, at the vessel's port of call; encouraged Plaintiffs and the Class to continue mingling and participating in large group events and functions before March 22, 2020; continued to provide turn down service to passengers before March 22, 2020, despite the fact that the ship's crew members had been exposed to COVID-19; and failed to institute any policies for quarantine, isolation, or social distancing for passengers until March 22, 2020.

126.    As a direct and proximate result of Defendants' intentional and reckless behavior and omissions, Plaintiffs and the Class suffered severe emotional distress and physical harm.

127.    Plaintiffs and the Class were forced to watch as their friends and family members became ill with COVID-19, and, all the while, fear for their own safety and well-being. Plaintiffs suffered physical and emotional injury as the direct and proximate result of Defendants' misconduct, and Plaintiffs continue to suffer from fear and anxiety that they may still begin exhibiting symptoms or experience as-yet-unidentified complications due to their exposure to and potential contraction of COVID-19 while aboard the MS ZAANDAM.

128.    As a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, Plaintiff Zehner became infected and was diagnosed with COVID-19, and was hospitalized for months, approximately three weeks of which were spent on a ventilator. Plaintiff Lindsay was put in imminent risk of suffering severe, potentially lethal, illness.

129.    Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the

CLASS ACTION COMPLAINT - 31
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame related to their own risk of contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the Class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the past and ongoing threat to their own health of becoming infected with the virus and potentially suffering from as-yet-unidentified negative health outcomes and complications.

130.    Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced into confinement on an infected vessel in isolation. It is expected that Plaintiffs and the Class will continue to suffer and will, in the future, require medical services not of a kind generally accepted as part of the wear and tear of daily life.

131.    Throughout the events described in this Complaint, Defendants repeatedly acted with conscious, callous, and/or reckless disregard for the rights, interests, health and safety of their passengers, such that the imposition of punitive damages, under general maritime law and/or all other applicable law, is necessary and appropriate to punish them for their course of conduct, and to deter them and others, and protect the public, from the consequences of similar conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1.    An order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule 23(a) and

CLASS ACTION COMPLAINT - 32
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

(b)(1), (b)(2), (b)(3) and/or (c)(4), designating Plaintiffs as named representative of the Class and designating the undersigned as Class Counsel;

2. An award of damages totaling in excess of Five Million Dollars ($5,000,000.00), inclusive of compensatory damages for Plaintiffs' injuries, including emotional pain and suffering and any other damages allowed by law, in an amount to be proven at trial;

3. An award of the costs of Plaintiffs' and the Class's ongoing medical monitoring and diagnostic examinations required to diagnose, prevent, and/or treat current or future injury related to Plaintiffs' and Class Members' exposure to and potential contraction of COVID-19, in light of the evolving scientific understanding of the full risk and scope of health outcomes of the virus

4. An injunction requiring Defendants to: disclose to future passengers the nature and rate of risk of communicable disease upon their cruise ships; implement disinfecting and sanitizing procedures on each of their ships in between and during voyages; implement appropriate social distancing and physical distancing protocols to avoid or reduce the transmission of communicable pathogens; disembark and quarantine passengers when Defendants become aware of a heightened risk of communicable disease aboard a ship; and canceling or discontinuing the operation of cruises when Defendants know or should have known of a potential deadly pathogen or similar aboard their ships.

5. An award of attorneys' fees and costs, as allowed by law;

6. An award of pre-judgment and post-judgment interest, as provided by law;

7. Leave to amend this Complaint to conform to the evidence produced at trial; and

8. For such other and further relief as the Court deems just and proper.

CLASS ACTION COMPLAINT - 33
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

1     **<u>DEMAND FOR JURY TRIAL</u>**

2     Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of

3 Civil Procedure.

4     DATED this 24th day of June, 2020.

5

6        TOUSLEY BRAIN STEPHENS PLLC

7        By: *s/ Kim D. Stephens*
          Kim D. Stephens, WSBA #11984

8        By: *s/ Jason T. Dennett*
9           Jason T. Dennett, WSBA #30686

10        By: *s/Rebecca L. Solomon*
          Rebecca L. Solomon, WSBA #51520

11

12        1700 Seventh Avenue, Suite 2200
       Seattle, Washington 98101
13        Telephone: 206.682.5600/Fax: 206.682.2992
       Email:    kstephens@tousley.com
14                jdennett@tousley.com
               rsolomon@tousley.com

15        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
16        Elizabeth J. Cabraser (SBN 083151)
       *ecabraser@lchb.com*
17        Jonathan D. Selbin (SBN 170222)
       *jselbin@lchb.com*
18        275 Battery Street, 29th Floor
       San Francisco, CA 94111-3339
19        Telephone: (415) 956-1000
       Facsimile: (415) 956-1008

20        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
21        Mark P. Chalos (*pro hac vice forthcoming*)
       *mchalos@lchb.com*
22        Kenneth S. Byrd (*pro hac vice forthcoming*)
       *kbyrd@lchb.com*
23        Madeline M. Gomez (*pro hac vice forthcoming*)
       *mgomez@lchb.com*
24        222 2nd Avenue South, Suite 1640
       Nashville, TN 37201
25        Telephone: 615.313.9000
       Facsimile: 615.313.9965

26

CLASS ACTION COMPLAINT - 34
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BARRETT JOHNSTON MARTIN & GARRISON, LLC
David W. Garrison (TN No. 24968)
*dgarrison@barrettjohnston.com*
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615.244.2202
Facsimile: 615.252.3798

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT - 35
Case No.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

4835-8838-5729, v. 1