UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEONARD C. LINDSAY and CARL E.W. ZEHNER, <br><br> Plaintiffs, <br><br> v. <br><br> CARNIVAL CORPORATION, CARNIVAL PLC, and HOLLAND AMERICA LINE N.V. d/b/a HOLLAND AMERICA LINE N.V. LLC, <br><br> Defendants. | C20-982 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on the Motion to Dismiss, docket no. 50, filed by Defendants Carnival Corporation, Carnival PLC (collectively, Carnival), and Holland America Line N.V. (Holland) (collectively, Defendants).  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiffs Leonard Lindsay and Carl Zehner (collectively, Plaintiffs) allege the following material facts in their Second Amended Complaint, docket no. 46, (SAC):  The

ORDER - 1

1 United States reported the first confirmed COVID-19 case on January 20, 2020.  SAC at
2 ¶ 29.  Ten days later, the World Health Organization (WHO) declared COVID-19 a
3 public health emergency of international concern.  Id. at ¶ 30.  In early February 2020,
4 the European Union released specific guidelines for the cruise industry related to the risks
5 posed by COVID-19.  Id. at ¶ 51.  "Specifically, the guidelines directed that, in the event
6 of a COVID-19 case, 'close contacts' of the case individuals believed to have COVID-19
7 should be quarantined in their cabin or on shore, and 'casual contacts' should be
8 disembarked from the ship."  Id.

9      Plaintiffs further allege that in early February, Defendants knew of a COVID-19
10 outbreak aboard the Diamond Princess, a cruise ship docked at Yokohama, Japan and
11 owned by Carnival's subsidiary, Princess Cruise Lines, LTD.  Id. at ¶¶ 53, 55.  Outbreaks
12 also occurred on other ships owned by Carnival's subsidiaries, including the Ruby
13 Princess, a cruise ship docked in Australia, and the M/V Grand Princess, a cruise ship
14 that departed San Francisco on February 21, 2020.  Id. at ¶¶ 61–62.

15      On March 7, 2020, Plaintiffs boarded the MS Zaandam, a cruise ship Carnival
16 owns through Holland, its wholly-owned subsidiary, in Buenos Aires, Argentina.  Id. at
17 ¶¶ 86.  Four days later, on March 11, 2020, the WHO declared COVID-19 a global
18 pandemic.  Id. at ¶ 89.  On March 13, 2020, Holland announced that, due to the
19 pandemic, it was suspending its cruise operations for 30 days.  Id. at ¶ 92.  The
20 passengers aboard the MS Zaandam, however, "continued to gather in large crowds,
21 attend cruise ship events, and share meals together" until March 22, 2020, when Holland
22 asked them to isolate in their staterooms.  Id. at ¶¶ 96–97.  Plaintiff Zehner began feeling
23

ORDER - 2

1 symptoms consistent with COVID-19 on March 27, 2020.  Id. at ¶ 102.  He later tested

2 positive for COVID-19.  Id.  On April 5, 2020, a helicopter transported Zehner to a

3 hospital in Orlando, Florida.  Id. at ¶ 113.  As of the filing of the SAC, Zehner had

4 returned home, but had not yet made a full recovery.  Id.  Plaintiff Lindsay believes he

5 also caught COVID-19 on the MS Zaandam, but "he has not received a positive test

6 confirming whether he had the virus."  Id. at ¶ 115.

7       Plaintiffs filed the SAC on October 30, 2020.  On November 20, 2020, Defendants

8 filed this motion to dismiss, seeking to dismiss Plaintiffs' class allegations, Lindsay's

9 claim for Negligent Infliction of Emotional Distress (NIED), Carnival as a defendant, and

10 both Plaintiffs' claims for intentional infliction of emotional distress (IIED).  Defendants

11 also contend that Plaintiffs lack standing to seek injunctive relief and move to dismiss

12 this claim.  The Court addresses each argument in turn.

13 **Discussion**

14 **A.     Rule 12(b)(6) Standard**

15       Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

16 provide detailed factual allegations, it must offer "more than labels and conclusions" and

17 contain more than a "formulaic recitation of the elements of a cause of action."  Bell Atl.

18 Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

19 mere speculation of a right to relief.  Id.  When a complaint fails to adequately state a

20 claim, such deficiency should be "exposed at the point of minimum expenditure of time

21 and money by the parties and the court."  Id. at 558.  A complaint may be lacking for one

22 of two reasons: (i) absence of a cognizable legal theory or (ii) insufficient facts under a

23

ORDER - 3

1 cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th

2 Cir. 1984).  In ruling on a motion to dismiss, the court must assume the truth of the

3 plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  Usher v.

4 City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the court is

5 whether the facts in the complaint sufficiently state a "plausible" ground for relief.

6 Twombly, 550 U.S. at 570.

**B.     Class Allegations**

Defendants argue that the Court should strike or dismiss the class allegations because, as a matter of law, Plaintiffs waived the right to bring a class action.  Though Plaintiffs recognize that their Cruise Contract contained a class action waiver, they assert that the waiver is unenforceable.

On a motion to dismiss, courts "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).  The court may take judicial notice of facts not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Likewise, before striking or dismissing class allegations, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable."  Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977); accord Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 & n.6 (9th Cir. 2009).

1    In arguing that the Court should strike or dismiss Plaintiffs' class allegations,
2 Defendants ask the court to consider matters outside the SAC.  Specifically, Defendants
3 cite the Bergman Declaration, docket no. 51, for several facts not contained in the SAC
4 relating to when and how Plaintiffs booked their cruise, when and how Plaintiffs received
5 notification of the Cruise Contract, and when Plaintiffs completed Holland's Online
6 Check-in process.  Because the SAC does not allege any facts regarding when and how
7 Plaintiffs received the Cruise Contract, the Court cannot determine on this record whether
8 Plaintiffs agreed to a valid class action waiver.  See Corna v. Am. Hawaii Cruises, Inc.,
9 794 F. Supp. 1005, 1010–11 (D. Haw. 1992) (determining a provision in a cruise contract
10 was unenforceable based on when the plaintiffs received the contract and how the
11 cancellation policy applied to the plaintiffs).  This issue must await further proceedings.[1]

12    **C.    Lindsay's Claim for Negligent Infliction of Emotional Distress**

13    Defendants assert that the Court should dismiss Lindsay's claim for NIED because
14 he does not allege any symptoms.  Under federal maritime law, plaintiffs seeking to
15 recover for NIED may bring a claim if their allegations satisfy "the zone of danger" test.
16 Stacy v. Rederiet Otto Danielsen, A.S., 609 F.3d 1033, 1035 (9th Cir. 2010) (citing
17 Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 547–48 (1994)).  "[T]he zone of danger
18 test limits recovery for emotional injury to those plaintiffs who sustain a physical impact

---

[1] The Court notes, however, that Defendants' arguments that Plaintiffs Lindsay and Zehner agreed to a valid and enforceable class action waiver are likely to succeed.  See Loving v. Princess Cruises Lines, Ltd., No. cv 08-2898-JFW, 2009 WL 7236419 at *4 (C.D. Cal. Mar. 5, 2009); Archer v. Carnival Corp. and PLC, No. 2:20-cv-04203-RGK-SK, 2020 WL 6260003 at *5–*7 (C.D. Cal. Oct. 20, 2020).

ORDER - 5

as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." Gottshall, 512 U.S. at 547–48.  Plaintiffs sustain a physical impact if they manifest some symptoms of a disease. Cf. Metro-North Commuter R.R Co. v. Buckley, 521 U.S. 424, 427 (1997) (concluding that the plaintiff could not recover under NIED based on exposure to a disease "unless, and until, he manifests symptoms").

Lindsay cites Stacy to argue that allegations of fright alone satisfy Gottshall's zone of danger test, but Stacy did not discuss the test in relation to contracting a disease.  The cases that have discussed the test in this context have held that "a plaintiff must manifest some symptom" of a disease to recover for NIED. Weissberger v. Princess Cruise Lines, Ltd., 2:20-cv-002267, 2020 WL 3977938, *3 (C.D. Cal. July 14, 2020); see Metro-North Commuter R. Co., 521 U.S. at 427.  Because Lindsay does not allege that he manifested any symptoms of COVID-19, the Court dismisses his claim for NIED without prejudice.

**D.     Carnival's Liability**

Defendants argue that Plaintiffs failed to allege that Carnival is liable for Holland's conduct because they do not sufficiently allege an independent duty of care.

In their SAC, Plaintiffs allege that Carnival undertook an independent duty of care to maintain a safe environment aboard the MS Zaandam. SAC at ¶ 64.  Plaintiffs allege that Carnival has a policy of promoting the health and safety of guests and promulgated health, environmental, safety, and security (HESS) policies for Holland. SAC at ¶¶ 65–67.  Further, the SAC alleges that Carnival's website states that it will ensure compliance with its HESS policies and will monitor and supervise safety requirements for its brands.

SAC at ¶ 67.  "A parent corporation may be liable for unsafe conditions at a subsidiary only if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary."  Muniz v. Nat'l Can Corp., 737 F.2d 145, 148 (1st Cir. 1984).  Defendants assert that a corporation's adoption of safety policies does not create an independent duty of care.  The SAC, however, alleges more than just adopting safety policies.  Plaintiffs allege that Carnival, in addition to developing and promoting safety policies for the MS Zandaam, monitored and supervised Holland employees who implemented the safety requirements.  The SAC adequately alleges that Carnival undertook an independent duty of care to maintain a safe environment aboard the MS Zaandam.  See Archer v. Carnival Corp. and PLC, 2:20-cv-04203-RGK-SK, 2020 WL 7314847, at *6 (C.D. Cal. Nov. 25, 2020).  The Court denies the motion to dismiss Carnival as a defendant at this time.  The matter will be revisited at the time of summary judgment.[2]

### E.     Intentional Infliction of Emotional Distress

Plaintiffs argue that Defendants' decision to sail the MS Zaandam amounted to outrageous conduct sufficient to support their IIED claims because, prior to setting sail, Defendants knew that the WHO had declared COVID-19 a public health emergency of international concern, the European Union had issued guidelines for the cruise ship industry, the conditions on cruise ships are uniquely dangerous for the spread of viruses,

---

[2] Because the Court determines that Carnival should not be dismissed as a defendant under the Plaintiffs' independent duty of care theory, it does not address the merits of Plaintiffs' alter-ego and agency theories.

Carnival was already dealing with outbreaks on two other cruise ships, and the California Governor had refused to allow one of Carnival's subsidiary's cruise ships into the port in San Francisco because of a COVID-19 outbreak onboard. SAC at ¶¶ 30, 51, 55–60, 62–63, 74–83.

In general, defendants commit the tort of IIED when they, through extreme and outrageous conduct, intentionally or recklessly cause severe emotional distress to another. Wallis, 306 F.3d at 841. The Ninth Circuit has set a high bar for an IIED claim, explaining:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that [they have] intended to inflict emotional distress, or even that [their] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id. (quoting the Restatement (Second) of Torts § 46 cmt. D (1965) (emphasis omitted)). The standard for IIED "is extremely difficult to meet." Id. at 842.

Accepting Plaintiffs' allegations as true, they fail to rise to the level of extreme and outrageous conduct necessary to state an IIED claim. The decision to set sail in the early weeks of what would become a global pandemic, when much remained unknown about COVID-19, does not constitute conduct beyond all possible bounds of decency. See Brown v. Royal Caribbean Cruises, Ltd., No. 16-24209, 2017 WL 3773709 at *2–3 (S.D. Fla. Mar. 17, 2017) (granting the defendant's motion to dismiss the plaintiff's IIED claim where defendant knew of the presence of Legionnaires' disease onboard a cruise

ship but did not advise passengers of the presence of the disease prior to the ship's departure from port). Indeed, Plaintiffs do not allege that Defendants acted in a manner inconsistent with what the Center for Disease Control had recommended at the time. The Court dismisses Plaintiffs' claim for IIED without prejudice.

### F.  Injunctive Relief

Defendants assert that the Court should dismiss Plaintiffs' request for injunctive relief because they lack Article III standing to seek prospective relief. Plaintiffs Lindsay and Zehner accepted an $800 cruise credit from Defendants toward future Holland cruises, which they used to book a cruise scheduled to sail in September 2021. SAC at ¶ 140. In their SAC, the Plaintiffs request injunctive relief to ensure Defendants implement various safety measures in the future, as follows:

> An injunction requiring Defendants to: disclose to future passengers the nature and rate of risk of communicable disease upon their cruise ships; implement disinfecting and sanitizing procedures on each of their ships in between and during voyages; implement appropriate social distancing and physical distancing protocols to avoid or reduce the transmission of communicable pathogens; disembark and quarantine passengers when Defendants become aware of a heightened risk of communicable disease aboard a ship; and canceling or discontinuing the operation of cruises when Defendants know or should have known of a potential deadly pathogen or similar aboard their ships.

SAC at 50.

To seek injunctive relief, Plaintiffs bear the burden to show that they may suffer an "'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will

ORDER - 9

prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). Defendants argue only that Plaintiffs do not face an imminent threat of future injury.

But Plaintiffs allege that they have booked a cruise with Holland for September 2021. Though Plaintiffs also allege that they cannot make an informed decision on whether to travel on a Holland cruise, that they have allegedly booked a future trip goes beyond a mere "profession of intent" to purchase tickets in the future and is sufficient to create standing to seek prospective relief. Cf. Lujan v. Def. of Wildlife, 504 U.S. 555, 565 (1992) (noting that "profession of an intent . . . is simply not enough" to support a finding of actual or imminent injury) (internal quotations omitted)). Additionally, Defendants' contention that there is no certainty that Holland would act negligently in the future does not warrant dismissing Plaintiffs' claim for injunctive relief, as Plaintiffs allege that Holland acted negligently in the past, and "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)). The motion to dismiss the claim for injunctive relief is denied.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendants' Motion to Dismiss, docket no. 50, is GRANTED in part and DENIED in part, as follows:

    (a) Plaintiff Lindsay's claim for NIED is DISMISSED without prejudice;

    (b)  All Plaintiffs' claims for IIED are DISMISSED without prejudice; and

    (c)  Defendants' motion is otherwise DENIED.

  (2)  Plaintiffs shall file any amended complaint within sixty (60) days of this Order with respect to their claims for NIED and IIED.

  (3)  The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 10th day of February, 2021.

              /s/ Thomas S. Zilly
              Thomas S. Zilly
              United States District Judge