UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEONARD C. LINDSAY and CARL E.W. ZEHNER,<br><br>Plaintiffs,<br><br>v.<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, and HOLLAND AMERICA LINE N.V. d/b/a HOLLAND AMERICA LINE N.V. LLC,<br><br>Defendants. | C20-982 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a Motion for Class Certification and Appointment of Class Representatives and Class Counsel, docket no. 62, filed by Plaintiffs Leonard Lindsay and Carl Zehner. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**<u>Background</u>**

Because the parties are familiar with the facts, this Order gives only a brief recitation of the relevant background.

ORDER - 1

On January 9, 2019, Plaintiffs used a travel agent to book the MS ZAANDAM cruise departing from Buenos Aires, Argentina on March 7, 2020.  Bergman Decl. (docket no. 51 at 2).  Guests had until December 8, 2019, 90 days before the cruise, to cancel for a full refund.  Id. at 8; Cruise Contract, Ex. 2 to Bergman Decl. (docket no. 51-2 at 8–9).

Also on January 9, 2019, the day Plaintiffs booked their cruise, a Booking Confirmation was emailed to their travel agent; the Booking Confirmation, which was attached to the email as a PDF document, contained an "**IMPORTANT NOTICES**" section, which provides, "All Holland America Line guests travel under the terms and conditions of the Cruise Contract that will be issued to you and which may be provided upon request or viewed on our website: www.hollandamerica.com.  Please read the contract carefully as it affects your legal rights."  Bergman Decl. at 2.  Travel agents routinely send the Booking Confirmation to the passenger as a matter of custom and practice in the industry.  Id. at 2.

The first page of the Cruise Contract provides, "**IMPORTANT NOTICE TO GUESTS: PLEASE CAREFULLY READ THE FOLLOWING CRUISE CONTRACT TERMS THAT GOVERN ALL DEALINGS BETWEEN YOU AND CARRIER, AFFECT YOUR LEGAL RIGHTS AND ARE BINDING ON YOU, TO THE FULL EXTENT PERMITTED BY LAW**."  Cruise Contract, Ex. 2 to Bergman Decl. (docket no. 51-2 at 2).  Section 15 of the Cruise Contract contains a class action waiver with "**WAIVER OF CLASS ACTION**" in the heading.  Id. at 17.  Section 15(c) of the Cruise Contract states:

**(C) WAIVER OF CLASS ACTION: THIS CRUISE CONTRACT PROVIDES FOR THE EXCLUSIVE RESOLUTION OF DISPUTES THROUGH INDIVIDUAL LEGAL ACTION ON YOUR OWN BEHALF INSTEAD OF THROUGH ANY CLASS OR REPRESENTATIVE ACTION. EVEN IF THE APPLICABLE LAW PROVIDES OTHERWISE, YOU AGREE THAT ANY ARBITRATION OR LAWSUIT AGAINST CARRIER WHATSOEVER SHALL BE LITIGATED BY YOU INDIVIDUALLY AND NOT AS A MEMBER OF ANY CLASS OR AS PART OF A CLASS OR REPRESENTATIVE ACTION, AND YOU EXPRESSLY AGREE TO WAIVE ANY LAW ENTITLING YOU TO PARTICIPATE IN A CLASS ACTION. IF YOUR CLAIM IS SUBJECT TO ARBITRATION UNDER SECTION 15(B)(ii) ABOVE, THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ARBITRATE CLAIMS ON A CLASS ACTION BASIS. YOU AGREE THAT THIS CLASS ACTION WAIVER SHALL NOT BE SEVERABLE UNDER ANY CIRCUMSTANCES FROM THE ARBITRATION CLAUSE SET FORTH IN SECTION 15(B)(ii) ABOVE, AND IF FOR ANY REASON THIS CLASS ACTION WAIVER IS UNENFORCEABLE AS TO ANY PARTICULAR CLAIM, THEN AND ONLY THEN SUCH CLAIM SHALL NOT BE SUBJECT TO ARBITRATION.**

Id. at 19.

Cruise passengers are required to complete an Online Check-In process before boarding, through which they must check a box indicating acceptance of the Cruise Contract and its terms. Bergman Decl. at 2–3. The year before their cruise, Plaintiffs received at least six automated emails instructing them to complete the Online Check-In process. Id. Plaintiffs completed the Online Check-In process, and thereby accepted the Cruise Contract, on January 31, 2020, 37 days before the MS ZAANDAM departed. Id. at 8.

While on the MS ZAANDAM, Plaintiff Zehner contracted COVID-19. Third Amended Complaint at ¶ 118 (docket no. 61). Plaintiff Lindsay also believes he

contracted COVID-19 on the MS ZAANDAM but did not get tested for the virus. Id. at ¶¶ 127, 131. Plaintiffs have since brought this suit as a putative class action on behalf of the 1,000-plus passengers who were aboard the MS ZAANDAM during the relevant time period, and they now move for class certification and appointment of class representatives and counsel. Id. at ¶ 1; Motion to Certify at 1–2.

**Discussion**

"A party seeking class certification must affirmatively demonstrate his [or her] compliance with [Rule 23]." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Under Rule 23(a), the party must show that the proposed class is (1) so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Pro. 23(a). Additionally, because Plaintiffs seek class certification under Rule 23(b)(3), they must also demonstrate that the common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods.

Defendants oppose class certification based on the class action waiver contained in the Cruise Contract. Although Plaintiffs acknowledge the waiver, they assert it is unenforceable because it was not reasonably communicated to Plaintiffs and, even if it was, it is inconsistent with the Federal Rules of Civil Procedure, specifically Rule 23.

//

//

**1.     Reasonable Communicative Test**

Courts use the "reasonable communicative test," which has two prongs, to determine "under federal common law and maritime law when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket." Oltman v. Holland Am. Line, Inc., 538 F.3d 1271, 1276 (9th Cir. 2008) (quoting Wallis v. Princess Cruises, Inc., 306 F.3d 827, 835 (9th Cir. 2002)). Under the first prong, courts focus on the ticket's physical characteristics and "assess features such as size of type, conspicuousness and clarity of the notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." Id. When analyzing the second prong, courts consider the circumstances surrounding the passenger's ticket purchase "including 'the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket.'" Id. (quoting Wallis, 306 F.3d at 836).

Plaintiffs do not argue that the terms of the class action waiver are not sufficiently clear or conspicuous. Instead, they assert that the class action waiver fails the first prong of the reasonable communicativeness test because the face of the ticket did not reference the Cruise Contract or the class action waiver. But courts have held that a contract provision satisfies the first prong even where the face of the ticket did not notify passengers of the contract. Oltman, 538 F.3d at 1276–77 (deciding reasonable communicative test was met where passengers were given a travel booklet with the cruise contract); see also Loving v. Princess Cruise Lines, Ltd., No. CV 08-2898, 2009 WL 7236419, at *3–4 (C.D. Cal. Mar. 5, 2009). Additionally, a California District Court also

ORDER - 5

recently upheld a class action waiver that was presented in the same Booking Confirmation and identical to the waiver at issue here.  See <u>Archer v. Carnival Corp. & PLC</u>, No. 2:20-cv-04203, 2020 WL 6260003, at *5–6 (C.D. Cal. Oct. 20, 2020)[1] (determining that a contract was not within an "electronic labyrinth" where plaintiffs were emailed a similar booking confirmation email and PDF attachment).

Plaintiffs also argue that the class action waiver fails the first prong because the emails they received instructing them to complete the Online Check-In did not mention the Cruise Contract.  The Booking Confirmation, however, which was sent to their travel agent on the day they booked the cruise, informed them of the Cruise Contract, where to find it, and that it affected their legal rights.  Bergman Decl. (docket no. 51 at 2).  Specifically, the Booking Confirmation contained an "**IMPORTANT NOTICES**" section, which provides, "All Holland America Line guests travel under the terms and conditions of the Cruise Contract that will be issued to you and which may be provided upon request or viewed on our website: www.hollandamerica.com.  Please read the contract carefully as it affects your legal rights."  <u>Id.</u>  Although the Booking Confirmation was sent to Plaintiffs' travel agent rather than to them directly, Tiffany Bergman, the Senior Manager of Access & Compliance and Documentation for Holland America Line N.V., stated in her declaration that travel agents routinely send passengers the Booking Confirmation as a matter of custom and practice in the industry.  <u>Id.</u>  Plaintiffs

---

[1] The Ninth Circuit declined to hear the plaintiffs' interlocutory appeal of that decision.  Order, No. 20-80152, Dkt. 20 (9th Cir. Feb. 17, 2021).

acknowledge that the Booking Confirmation was sent to their travel agent on the day they booked the cruise and do not submit a declaration or any other evidence demonstrating that their travel agent never sent them the Booking Confirmation or that they failed to receive it.

Plaintiffs next argue that the Cruise Contract fails the second prong of the test because, by the time they reviewed it, they could not refuse its terms without incurring significant fees. But the Court's analysis focuses on when the contract terms were reasonably communicated, not when a passenger actually reviewed them. See Oltman, 538 F.3d at 1277 ("Although the Oltmans may not have read the terms and conditions before departing, they were free to read them at their leisure . . . ."). Indeed, "[a] party cannot avoid the effect of contractual provisions to which he [or she] is a party by simply choosing not to read the contract." Corna v. Am. Haw. Cruises, Inc., 794 F. Supp. 1005, 1010 (D. Haw. 1992) (citing Marek v. Marpan Two, Inc., 817 F.2d 242, 247 (3d Cir. 1987)).

At the time of booking on January 9, 2019, the Booking Confirmation notified Plaintiffs that they must accept the terms and conditions of the Cruise Contract and where to access it. Accordingly, on January 9, 2019, Plaintiffs had access to the Cruise Contract online and could have read its terms at their leisure. Bergman Decl. (docket no. 51 at 2). Under the Cruise Contract, Plaintiffs had until 90 days before the cruise to cancel for a full refund. Cruise Contract at 8–10. Thus, at any time between when they booked their cruise and 90 days before it departed—an eleven-month period—Plaintiffs could have accessed the Cruise Contract, reviewed its terms, and cancelled for a full refund.

Plaintiffs rely on a District of Hawaii case in which a court invalidated a forum selection clause in a cruise contract. See Corna, 794 F. Supp. at 1011. But in Corna, the district court determined that although the forum selection clause had been reasonably communicated, the contract was not fundamentally fair because the plaintiffs had booked the cruise on a standby basis, and thus did not receive the contract until two to three days before the cruise departed; at that point, the plaintiffs would have forfeited the entire ticket price if they cancelled the trip. Id.; but see Oltman, 538 F.3d at 1276–77 (enforcing limitations clause where plaintiffs received contract at the time of departure because they had booked the cruise only 13 days prior). Here, Plaintiffs do not contend that the Cruise Contract is fundamentally unfair. Furthermore, the facts of this case are distinguishable from those in Corna because Plaintiffs had eleven months to review the Cruise Contract and cancel for a full refund.[2] The Court determines the Cruise Contract, including its class action waiver, was reasonably communicated to Plaintiffs.

### 2. Entitlement to Class Proceedings under Rule 23

Plaintiffs next argue that Rule 23, which addresses class actions, creates a categorical rule entitling a plaintiff to pursue a class action as long as they meet Rule 23's requirements. Motion for Class Certification (docket no. 62 at 19).

Although Plaintiffs characterize Rule 23 as more than "just a procedural rule," the Ninth Circuit recently described class action waivers as "a promise to forgo a procedural

---

[2] Even if Plaintiffs were not aware of the Cruise Contract until they completed the Online Check-In, this was still 37 days before the cruise departed.

ORDER - 8

right to pursue class claims." Laver v. Credit Suisse Sec. (USA), LLC, 976 F.3d 841, 846 (9th Cir. 2020). Similarly, the Supreme Court, in upholding a class action waiver in an arbitration agreement, rejected the notion that Rule 23 established an entitlement to class proceedings. Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 234 (2013); see also Archer, 2020 WL 6260003, at *7 (rejecting argument that a class action waiver violates public policy because it deprives courts of the authority to effectively fashion legal remedies and to control their cases). Plaintiffs fail to cite any case law where a court used Rule 23 to invalidate an otherwise enforceable class action waiver.

Instead, Plaintiffs cite a Supreme Court decision that determined a state law prohibiting class actions in suits seeking penalties or statutory minimum damages did not apply in federal court. Shady Grove Orthopedic Ass'n, P.A. v. Allstate Ins. Co., 559 U.S. 393, 398–99 (2010). But that case is distinguishable in that it involved a state statute, not a class action waiver. Id. at 398. This distinction is significant because in Shady Grove Orthopedic, the Supreme Court emphasized that Rule 23 gives plaintiffs the exclusive discretion whether to bring a class action and the statute limited that discretion. Id. at 400. In a class action waiver, by contrast, plaintiffs themselves promise to forgo their procedural right to pursue a class action claim. See Laver, 976 F.3d at 846; see also Am. Express, 570 U.S. at 234.

Plaintiffs also cite a Supreme Court decision concerning a forum selection clause. There, the Supreme Court held that because a forum selection clause has no bearing on whether a venue is "improper" under 28 U.S.C. § 1406, the procedure available to a defendant seeking to enforce a forum selection clause is a motion for transfer under

28 U.S.C. § 1404. Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 55–59 (2013). The Court explained that whether a venue is improper under § 1406 "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." Id. at 55. The Court further held that district courts should enforce forum selection clauses in all but the most exceptional cases. Id. at 63. Forum selection clauses, the Court explained, change the typical transfer analysis because the plaintiff's choice of forum merits no weight and district courts should hear arguments relating to only the public-interest factors of the transfer analysis. Id. at 63–64.

Contrary to Plaintiffs' arguments, Atlantic Marine Construction does not suggest that Rule 23 acts as a categorical bar to class action waivers. First, the case analyzed the proper procedure for transfer and did not suggest that parties may not contract away procedural rights under the applicable Rules. Second, while federal statute exclusively determines whether a forum is proper and courts exclusively decide whether to transfer a case, the decision of whether to bring a class action lies with the plaintiff alone. As such, plaintiffs may contractually agree to forgo their procedural right to bring a class action and, if that agreement is otherwise valid, courts may enforce the waiver without considering the typical inquiries involved in a Rule 23 analysis. See Archer, 2020 WL 6260003, at *8. For these reasons, Plaintiffs' argument lacks merit.

The Court concludes that Plaintiffs' Motion to Certify Class is barred by the Cruise Contract's class action waiver. Accordingly, the Court need not address whether

Plaintiffs satisfy the requirements for class certification under Rule 23 or whether joinder is appropriate under Rule 42(b).

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiffs' Motion to Certify Class, docket no. 62, is DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 30th day of June, 2021.

Thomas S. Zilly
United States District Judge